UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GRANT F. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-00777 (TSC) |
| | ) | |
| UNITED STATES OF AMERICA, *et. al*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") action, Plaintiff Grant F. Smith, proceeding *pro se*, has sued Defendants United States of America, John J. Sullivan, Acting Secretary of the U.S. Department of State ("DOS"), and Rick Perry, Secretary of the Department of Energy ("DOE") to compel compliance under 5 U.S.C. § 552. (ECF No. 1 ("Compl.").)

Pending before the court are four motions. The DOS moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for dismissal or, in the alternative, for summary judgment pursuant to Rule 56. (ECF No. 14 ("Defs.' Mot.").) The DOE moves, pursuant to Rule 56, for summary judgment. (*Id.*) Smith has filed two cross-motions for summary judgment. (ECF Nos. 15 ("Pl.'s Cross-Mot."); 16 ("Pl.'s Am. Cross-Mot.").)

For the reasons set forth below, the DOS' motion to dismiss will be GRANTED and its motion for summary judgment will be DENIED as moot, the DOE's motion for summary judgment will be GRANTED, and Smith's motions for summary judgment will be DENIED.

1

# I. BACKGROUND

Smith is an author, public interest researcher, and founder of the Institute for Research: Middle Eastern Policy, Inc. (ECF No. 1 ("Compl.") ¶ 7.)

On February 18, 2015, Smith filed a FOIA request with the DOE, seeking document WNP-136, "Guidance on Release of Information Relating to the Potential for Israeli Nuclear Capability." (*Id.* ¶¶ 1, 8; ECF No. 15-1 ("7(h) Statement") ¶ 1.) By letter dated February 23, 2015, the DOE confirmed receipt of the request and assigned it a tracking number. (Compl. Ex. A.)

On August 20, 2015, the DOE sent Smith a final response, informing him that it was releasing a redacted version of the two-page document. (*Id.* Ex. B.) The redacted material included information that the DOE determined was protected by exemption 7(E) and that the DOS advised was protected by exemption 1. (*Id.*) The final response also informed Smith of his right to appeal the DOE's decision. (*Id.*)

Smith timely appealed the DOE's decision on August 25, 2015. (Compl. ¶ 11; 7(h) Statement ¶ 6.)

By letter dated February 12, 2016, the DOE informed Smith that his appeal was denied, and attached a Decision and Order explaining the basis for its decision and informing him that he could seek judicial review of the DOE's final order. (Compl. Ex. C.)

On April 5, 2018, Smith filed this action against the United States, the DOE, and the DOS, and on July 26, 2018, Defendants filed their respective dispositive motions.

On August 2, 2018, Smith filed a FOIA request with the DOS, challenging its advice to withhold one sentence in WNP-136, and seeking immediate release of the sentence. (Pl.'s Cross-Mot. at 35; ECF No. 17-2 ("Pl.'s DOS FOIA Request").) By letter dated August 28, 2018, the DOS informed Smith that the sentence was exempt from disclosure because the information pertained to foreign relations or

foreign activities of the United States and the release of the information could reasonably be expected to cause damage to national security. (ECF No. 17-3 ("DOS' FOIA Response").) The letter also appraised Smith of his right to an administrative appeal. (*Id.*)

## II.  LEGAL STANDARD

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. ("CREW") v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *CREW*, 602 F. Supp. 2d at 123 (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). The burden is on the government agency to show that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

"Where the nonmoving party is proceeding *pro se*, courts in this jurisdiction will construe the non-moving party's filing liberally." *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). "However, a *pro se* litigant still has the burden of establishing more than '[t]he mere existence of a scintilla of evidence' in support of his position." *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

3

A. **Rule 12(b)(6) Motion to Dismiss**

FOIA cases are typically decided on motions for summary judgment. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). However, where an agency argues that the requester has failed to exhaust its administrative remedies, courts analyze the matter under Federal Rule of Civil Procedure 12(b)(6). *See Tereshchuk v. Bureau of Prisons*, 851 F. Supp. 2d 157, 161 (D.D.C. 2012) (analyzing motion to dismiss for failure to exhaust administrative remedies under Rule 12(b)(6)); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 (D.D.C. 2012) (same).

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it alleges sufficient facts to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). When considering a defendant's motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979), *aff'd on reh'g*, 628 F.2d 199 (D.C. Cir. 1980) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").

B. **Rule 56 Motion for Summary Judgment**

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

In cases where the applicability of certain FOIA exemptions is at issue, agencies may rely on supporting declarations that are reasonably detailed and non-conclusory. The declarations must provide enough information "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civ. Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

## III. ANALYSIS[1]

### A. <u>DOS' Motion to Dismiss, or, in the Alternative, for Summary Judgment</u>

The DOS moves to dismiss Smith's claims, in part, because Smith did not file an administrative appeal before filing suit in federal court.[2] (*See* Defs.' Mot. at 8–9; ECF No. 17 ("Defs.' Reply") at 2–3.) Smith acknowledges that he filed a FOIA request with the DOS after he brought this case, (Pl.'s Cross-Mot. at 35), and does not dispute Defendants' representation that he did not file an administrative appeal.

The "exhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008). "Failure to exhaust administrative remedies is *not* a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review." *Nat'l Sec. Counselors v. C.I.A.*, 931 F. Supp. 2d 77, 99 (D.D.C. 2013) (emphasis in original). However, exhaustion of administrative remedies is required only when, within twenty business days of the request, an agency makes and communicates its determination whether to comply with the FOIA request. 5

---

[1] As Defendants note, FOIA complaints are properly brought against only federal agencies. *See Cunningham v. U.S. Dep't of Justice*, 961 F. Supp. 2d 226, 239 (D.D.C. 2013) (citing 5 U.S.C. § 552(a)(4)(B)) (finding plaintiff's claims against individual defendants not covered under FOIA). The court therefore construes Smith's pleadings to be against the agencies in their institutional capacity and accepts Defendants' proposal to view the dispositive motions as filed on behalf of the DOE and DOS. (Defs.' Mot. at 1 n.1.)

[2] The DOS also moved to dismiss because at the time Smith filed this lawsuit, he had not filed a FOIA request with the DOS. (*See* Defs.' Mot. at 8–9.) However, because Smith subsequently filed a request with the DOS, the DOS focused its argument on Smith's failure to appeal the DOS' denial of his FOIA request. (*See* ECF No. 17 ("Defs.' Reply") at 2–3.) In addition, as DOS notes, (*id*. at 10), failure to exhaust administrative remedies under FOIA does not automatically strip the court of subject matter jurisdiction, *see Hines v. United States*, 736 F. Supp. 2d 51, 53 (D.D.C. 2010) ("In the FOIA context, the exhaustion requirement is a prudential consideration, not a jurisdictional prerequisite."), so the court assesses DOS' motion under Rule 12(b)(6) as opposed to Rule 12(b)(1).

U.S.C § 552(a)(6)(A)(i). "[I]f the agency has not issued its 'determination' within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies." *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013).

FOIA's general requirement that a requester exhausts its administrative remedies before filing suit in federal court serves many purposes. It provides the agency with "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 333 (D.C. Cir. 2018) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). It "obviates unnecessary judicial review" by allowing "top managers of an agency to correct mistakes made at lower levels." *Id.* And the "administrative appeal mechanism undergirds FOIA's 'innovation-forcing' function, which requires an 'agenc[y] to consider "adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation of" the statute.'" *Id.* at 333–34 (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 789–90 (D.C. Cir. 2018) (Pillard, J., concurring)).

Though failure to exhaust administrative remedies is not a bar to judicial review, a court deciding a motion to dismiss on this basis should generally find for the movant where the failure to do so deprives "the agency [] an opportunity to exercise its discretion and expertise on the matter." *Flaherty v. President of U.S.*, 796 F. Supp. 2d 201, 206 (D.D.C. 2011) (quoting *Oglesby*, 920 F.2d at 61). "Accordingly, if a FOIA plaintiff attempts to obtain judicial review without first properly exhausting administrative remedies, the lawsuit is subject to dismissal." *Id.* (quoting *Wilbur v. C.I.A.*, 355 F.3d 675, 676 (D.C. Cir. 2004)).

Here, there is no question that Smith failed to properly exhaust his administrative remedies. Putting aside the fact that, at the time he sued the DOS, Smith had not filed a FOIA request with the DOS, *see Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) ("It cannot be said that an agency

7

improperly withheld records if the agency did not receive a request for those records."), after the DOS responded to his belated request, Smith did not file an appeal. "Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts." *Oglesby*, 920 F.2d at 61–62. The court sees no basis upon which to depart from that usual practice. The DOS should have the opportunity to reconsider its decision to deny Smith's FOIA request internally before litigating the issue.

Accordingly, the court finds that Smith's failure to file an appeal deprived the DOS of the opportunity to exercise its discretion and expertise on the request. The court therefore will grant DOS' motion to dismiss and deny DOS' motion for summary judgment as moot.[3]

### B. **DOE's Motion for Summary Judgment**

The DOE invokes FOIA exemptions 1 and 7(E) in support of its redactions. (Defs.' Mot. at 11–16.) In response, Smith mounts global as well as individual challenges to each exemption, none of which are availing.

1. The DOE's Invocation of Exemption 1

Exemption 1 applies where the information requested is "specifically authorized under the criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "properly classified" under the Executive order. 5 U.S.C. § 552(b)(1).

---

[3] Ordinarily, a court considering matters outside of the pleadings on a motion to dismiss converts the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, when considering a motion to dismiss filed against a *pro se* plaintiff, the court is not restricted to the initial complaint. *See Brown v. Whole Foods Market, Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("We have previously held that a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."). Therefore, the court reviewed Smith's briefs as well as his complaint in determining whether he exhausted his administrative remedies. If the court were to convert the motion to one for summary judgment, the court would rule in favor of DOS because it provided additional support that Smith failed to file an administrative appeal.

As evidence that it properly invoked exemption 1, the DOE described, in its moving papers and accompanying exhibits, how it determined that exemption 1 applied. (Defs.' Mot. at 11–14.) In response, Plaintiff challenged only whether the DOE waived its right to invoke exemption 1 "because the fact that Israel has a nuclear weapons program has already been officially disclosed."[4] (Pl.'s Cross-Mot. at 15–21.)

A plaintiff may overcome an otherwise valid invocation of a FOIA exemption if he demonstrates that the sought-after records have been officially acknowledged in the public domain. *See Am. Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 426 (D.C. Cir. 2013) ("[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information."). Information is officially acknowledged where: (1) the information requested is as specific as the information previously released; (2) the information requested matches the information previously disclosed; and (3) the information requested has already been made public through an official and documented disclosure. *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990). Ultimately, to constitute acknowledgement, the previous disclosure must "appear[] to duplicate" the material sought. *Assassination Archives and Res. Ctr. v. C.I.A.*, 334 F.3d 55, 60 (D.C. Cir. 2003) (internal quotation and citation omitted).

In support of his argument that the information sought has been officially acknowledged, Smith cites: (1) statements from the CIA Director of Science and Technology, Carl Duckett; (2) the U.S. Central Intelligence Agency 1974 Special National Intelligence Estimate; (3) a report by the United States Airforce Counterproliferation Center of the Air War College entitled, "The Third Temple's Holy of Holies: Israel's Nuclear Weapons"; (4) an Institute for Defense Analyses report entitled "Critical

---

[4] Because Smith does not contest the DOE's reliance on exemption 1, the court focuses its analysis on whether there has been an official acknowledgement that precludes the invocation of exemption 1.

Technology Assessment in Israel and NATO Nations"; and (5) a 2008 statement from former President Jimmy Carter. (Pl.'s Cross-Mot. at 16–21.) Smith also cites news articles from the *New York Times*, *The Washington Monthly*, *The Guardian*, *The Nation*, and *Reuters*. (*Id.*)

Each of Smith's proffered official acknowledgment fails for the same reason: none of them are directly attributable to the DOE. The D.C. Circuit has made clear that courts in this district "do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought." *Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir. 1999).

Accordingly, this court finds that the DOE is entitled to summary judgment on whether it is precluded from invoking exemption 1 because of its official acknowledgment.

2. The DOE's Invocation of Exemption 7(E)

An agency properly withholds information under exemption 7(E) if: (1) the information withheld is "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), (2) the disclosure of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), and (3) "such disclosure could reasonably be expected to risk circumvention of the law," *id.* Information is compiled for law enforcement purposes where an agency shows "a nexus between the agency's activities and a legitimate law enforcement purpose." *Coleman v. F.B.I.*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998). The term "law enforcement purposes" is not confined to criminal law; rather the term is read "as encompassing the enforcement of national security laws as well." *Strang v. U.S. Arms and Control Disarmament Agency*, 864 F.2d 859, 862 (D.C. Cir. 1989); *see also Pratt*, 673 F.2d at 420 (noting that there must be a legitimate concern "that federal laws have been or may be violated or that national security may be breached").

The D.C. Circuit has stated that "[u]nder our precedents, Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). However, an agency must still proffer evidence that it has cleared the bar. *Compare Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 46–47 (D.D.C. 2012) (finding that Customs and Border Protection failed to meet the "low standard" where it offered too little detail on how documents pertaining to President Barack Obama's late mother were related to law enforcement techniques, procedures, and guidelines), *with Blackwell*, 646 F.3d at 42 (finding agency met "low bar" where it provided affidavits stating that information about forensic examination procedures would expose computer forensic vulnerabilities to potential criminals and help criminals circumvent the law).

Here, the DOE has submitted a declaration from Edith Chalk, Director of the Office of Technical Guidance in DOE's Office of Classification. (ECF No. 14-2 ("Chalk Decl.") ¶ 1.) As part of her role, Chalk "balance[s] DOE's commitment to maximize the amount of information that can be made available to the public with the need to protect national security and prevent nuclear proliferation." (*Id.* ¶ 2.) Chalk states that the document at issue has been "prepared for the sole purpose of assisting the Federal Government in identifying and protecting sensitive information as defined in the Atomic Energy Act of 1954, as amended, and Executive Order 13,526, Classified National Security Information." (*Id.* ¶ 18.) The classification guide provides "internal, procedural guidance" that is "issued to individuals whose duties are directly related to classification." (*Id.* ¶¶ 18–19.) Before an individual can view the guides she must undergo a multi-layered review. (*Id.* ¶ 19.) Release of this classification guide would

11

"provide insight into the types of information the government considers to be classified," thereby reducing and potentially nullifying the effectiveness of the classification procedure, which is still in effect. (*Id.* ¶ 20.) In addition, it "would impair the DOE's ability to enforce laws related to protecting classified information from public release." (*Id.*)

The explanation set forth in the Chalk declaration satisfies the exemption 7(E) standard. There is a logical nexus between the DOE's activities and a legitimate national security law enforcement purpose.

The court finds Smith's arguments to the contrary meritless because each is grounded in speculation. Smith argues that: (1) "in practice Defendants used WNP-136 to punish DOE employee James Doyle"; (2) the DOE has disclosed that the techniques and procedures it wishes to protect are "[h]ome raids, dismissal, threatened prosecutions for the disclosure of non-classified information"; (3) contrary to the Declaration, the materials are not sensitive; and (4) the withheld material is "likely merely a list of penalties federal agency employees and contractors will suffer if they ever dare mention the non-secret that Israel has a nuclear weapons program." (Pl.'s Cross-Mot. at 22–23.) However, Smith has provided no factual basis for this court to find that WNP-136's purpose is anything but to provide guidance on classification, in accord with its title, "Guidance on Release of Information Relating to the Potential for Israeli Nuclear Capability." Accordingly, the court finds that the DOE properly invoked exemption 7(E).

3. Smith's Global Challenges

Smith makes two overarching challenges to the DOE's withholding. First, he argues that the DOE withheld the information in order to avoid the embarrassment of acknowledging that Israel stole DOE-owned weapons-grade nuclear material from a U.S. facility. (Pl.'s Cross-Mot. at 28–29.) Second,

Smith argues that the classification guideline is a way to facilitate violations of the Arms Export Control Act ("AECA"). (*Id.* at 35–39.)

### a. Smith has Not Shown the DOE to be Preventing Embarrassment

Executive Order 13,526 limits the reasons an agency may classify information. It states, in part, that "[i]n no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to . . . prevent embarrassment to a person, organization, or agency." Exec. Order No. 13,1526, § 1.7(a)(2), 75 Fed. Reg. 707 (Jan. 5, 2010). "[M]ere speculation that an agency withheld or classified information to avoid embarrassment is not sufficient to pull that information outside the scope of EO 13,526." *Competitive Enter. Inst. v. Dep't of Treasury*, 319 F. Supp. 3d 410, 418 (D.D.C. 2018).

Here, Smith relies on an entry from Atomic Energy Commissioner Glenn T. Seaborg's journal in which he wrote that two DOE investigators visited him and said that "some enriched Uranium-235 which can be identified as coming from the Portsmouth, Ohio plant has been picked up in Israel which, of course, has excited some members of Congress." (Pl.'s Cross-Mot. at 28.) Based on this entry, Smith asks the court to infer that the DOE is withholding a document instructing its employees on how to classify documents about Israeli nuclear capability to avoid the embarrassment of acknowledging that Israel stole nuclear material from the United States. (*Id.* at 28–29.) The court declines to make this inference. The connection between the statement in the journal and the inference Smith seeks is attenuated, at best. Further, Smith's "evidence" is completely speculative, and he has not offered any facts to indicate that the DOE seeks to avoid embarrassment by withholding the classification guide. Therefore, the court cannot find that the DOE's motive for the withholding is improper or pulls the information outside the scope of Executive Order 13,526.

*b. Smith has Not Adequately Shown Concealment of Violation of the Law*

Section 1.7(a)(1) of Executive Order 13,526 bars classifying information in order to conceal violations of the law. *See* Exec. Order 13,526 § 1.7(a)(1). A plaintiff alleging that an agency has classified information to conceal lawbreaking "must provide something more than conjecture to show that the agency's withholding decision violates Executive Order 13,526." *Associated Press v. F.B.I.*, 265 F. Supp. 3d 82, 96–97 (D.D.C. 2017). Credible evidence is required. *See Canning v. U.S. Dep't of Justice*, 848 F. Supp. 1037, 1047–48 (D.D.C. 1994) (rejecting plaintiff's challenge where plaintiff presented claims "based primarily on speculation" and failed to present "credible evidence that the agency's motives for its withholding decisions were improper or otherwise in violation of E.O. 12356").[5]

Smith relies on the Arms Export Control Act ("AECA"), 22 U.S.C. § 2799aa-1, under which "no funds made available to carry out the Foreign Assistance Act of 1961" or other provisions of the AECA "may be used for the purpose of providing," economic or military assistance to "any country which the President determines" to be engaged in nuclear weaponry. *Id.*

Smith argues that the purpose of the classification guide is to "undermine enforcement of the AECA so that the lion's share of U.S. foreign aid may be smoothly delivered to Israel without application of § 2799aa-1." (Pl.'s Cross-Mot. at 36.) He then contends that he is entitled to a ruling in his favor because the DOE has failed to rebut this assertion. (*Id.* at 35–39.) The court disagrees.

The AECA only bars foreign aid to countries that the President has determined to be delivering or amassing nuclear weapons. *See* 22 U.S.C. § 2799aa-1(a)(1). Smith has not shown that any United States President has found Israel to be engaging in such activity, and he also lacks standing to compel

---

[5] Executive Order 13,526, signed by President Obama on December 29, 2009, was previously Executive Order 12,356, signed by President Reagan on April 2, 1982. Exec. Order No. 12,356, 47 Fed. Reg. 14,874 (1982).

14

such a determination. *See Smith v. United States*, 715 F. App'x 10, 10 (D.C. Cir. 2018) ("The district court correctly concluded that appellant lacked standing to seek a writ of mandamus directing the President to determine, pursuant to the Arms Export Control Act of 1961, 22 U.S.C. § 2799aa-1, whether Israel has engaged in certain conduct related to the development of nuclear weapons.").

The court therefore cannot find that the DOE withheld the classification guide in order to conceal violations of law.

\*     \*     \*

Accordingly, Smith's global challenges to the withholding of the classification guideline must fail as he has not met his burden.[6] In addition, the court rejects Smith's request for an *in camera* review.[7]

---

[6] The court has reviewed Smith's procedural challenge to the withholding, (Pl.'s Cross-Mot. at 30–35), and found it to be without merit. Smith's entire challenge is premised on Defendants' failure to comply with DOJ referral guidance, and here, instead of referring the request to DOS for direct reply, DOE consulted DOS. (Defs.' Reply at 2.) Thus, DOE was not obligated to comply with the referral guidance.

The court has also reviewed Smith's argument that the DOE did not follow the reclassification procedures outlined in Section 1.7(c) of Executive Order 13,526, (Pl.'s Cross-Mot. at 39–40), and found that argument to be without merit. Smith's challenge is based on the DOE using the classification guideline to reclassify information that is already in the public domain. However, this assumption is not supported by record evidence and the court has found that Smith has not shown that the withheld portions of WNP-136 have been officially acknowledged.

[7] The D.C. Circuit has stated "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without [i]n camera review of the documents." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). The court has found the affidavits to be sufficient and uncontradicted by record evidence. Smith has not shown that the DOE has engaged in bad faith. And Smith's proffered Google poll, (Pl.'s Cross-Mot. at 42), which asked participants "Should the U.S. enforce the AECA?" does not convince the court to exercise its discretion to conduct an *in camera* review.

15

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS the DOS' motion to dismiss and the DOE's motion for summary judgment; and DENIES the DOS' motion for summary judgment as moot, Smith's cross-motion for summary judgment, and Smith's amended cross-motion for summary judgment.

The clerk of court is respectfully directed to close this case.

A corresponding order will issue separately.


Date:  September 30, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge